UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONALD SIME, Petitioner, v. CHRISTOPHER LAROSE, Warden, et al., Respondents. | Case No.: 26-cv-5783-BJC-VET **ORDER GRANTING PETITION FOR HABEAS CORPUS** **[ECF Nos. 1, 4–5]** |

On October 9, 2026, Petitioner Jonald Sime ("Petitioner") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No 1. On October 15, 2026, Respondents filed their Return, ECF No. 4, to which Petitioner filed a Traverse on October 16, 2026. ECF No. 5. For the foregoing reasons, the Court grants Petitioner's Petition for Writ of Habeas Corpus and orders his immediate release.

## I. BACKGROUND

On December 3, 2024, Petitioner, a native and citizen of Haiti, entered the United States at the San Ysidro, California Port of Entry. ECF No. 4 at 2. On January 5, 2024, Petitioner was processed by the Department of Homeland Security ("DHS") and then paroled into the United States under 8 U.S.C. § 1182(d)(5). ECF No. 1 at ¶ 26; ECF No. 4 at 2. Following his release, Petitioner has "remained physically at liberty while federal

immigration authorities continue administering his immigration matters." ECF No. 1 at ¶ 28. His next scheduled master calendar hearing is set for December 17, 2026. *Id.* at ¶ 31.

On October 7, 2026, Petitioner was arrested and detained by Immigration and Customs Enforcement ("ICE") officers while he was driving in San Diego, California. *Id.* at ¶ 34. Petitioner is currently being detained at the Otay Mesa Detention Center. *Id.* Petitioner alleges that, prior to his re-detention, "Respondents provided no advance written notice that he was required to surrender or return to immigration custody, no meaningful opportunity to be heard, and no individualized determination before a neutral decisionmaker concerning whether re-detention was warranted." *Id.* at ¶ 35.

On October 10, 2026, Petitioner filed a Petition for Writ of Habeas Corpus, alleging that his re-detention violated his constitutional right to due process as guaranteed by the Fifth Amendment and the revocation of his liberty interest violated the Administrative Procedure Act ("APA"). *See* ECF No. 1. On October 15, 2026, Respondents filed their Return, contending that "[i]t is the government's position that Petitioner is subject to mandatory detention under § 1225(b)(2)." ECF No. 4 at 2. Respondents concede that "Petitioner was previously released from immigration custody on parole issued under 8 U.S.C. § 1182(d)(5)" but did not have sufficient "information regarding termination of that parole, pursuant to 8 C.F.R. § 212.5(e)(2), to provide to the Court." *Id.* Nonetheless, Respondents "do[] not oppose the petition and defers to the Court on the appropriate relief. *Id.* at 4. On October 16, 2026, Petitioner filed a Traverse, arguing that "because Respondents have not established that they terminated Petitioner's parole in compliance with 8 C.F.R. § 212.5(e)(2) or provided constitutionally adequate process before revoking his previously granted liberty, the Court should grant the Petition and order Petitioner's immediate release under his prior conditions of release." ECF No. 5 at 14.

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of

that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a district court has authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." *Id*.

## III. DISCUSSION

The Fifth Amendment guarantees that "[n]o person shall be … deprived of life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. This right extends to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 681 (2001); *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings."). Accordingly, once a noncitizen has "passed through our gates," they "may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law" occur. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953). Due Process proceedings generally "require[] some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original); *see also Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process").

Respondents do not contest that Petitioner "passed through [the] gates" on January 5, 2024 and was then paroled into the United States under 8 U.S.C. § 1182(d)(5). ECF No. 1 at ¶ 26; ECF No. 4 at 2. Nonetheless, Respondents, in a footnote, quote language from § 1182(d)(5)(A), the statute under which Petitioner was granted parole, for support that Petitioner's detention is proper under 8 U.S.C. § 1225 because his parole is only "temporar[y]," "not [] regarded as an admission," and subject to termination "when the purposes of such parole … have been served[.]" ECF No. 4 at 2, n.1. The Court disagrees.

The law is clear that noncitizens *already* in the interior of the United States are subject to 8 U.S.C. § 1226—not 8 U.S.C. § 1225. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018) (Section 1226 "applies to [noncitizens] already present in the United States"); *see also Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1172 (9th Cir. 2026) (concluding that "§ 1225(b)(2)(A) … is best construed as applying to [noncitizens] entering the United States at the border," whereas "Section 1226, by contrast, is best understood as governing inadmissible and deportable [noncitizens] present in the interior of the United States"). This includes applicants granted humanitarian parole under § 1182(d)(5)(A). *See, e.g.*, *Maurice v. Mullin*, 2026 WL 3270023, at *2 (S.D. Cal. Oct. 30, 2026) (finding that, "while a noncitizen may not be deemed admitted in the United States pursuant to § 1182(d)(5)(A), the noncitizen is not necessarily subject to mandatory detention") (citing *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 (S.D. Cal. 2025)).

Petitioner's re-detention is governed by 8 U.S.C. § 1226. Here, Petitioner was paroled into the United States on January 5, 2024. ECF No. 1 at ¶ 26; ECF No. 4 at 2. The government's decision to release Petitioner from custody on parole, created, at that time, "'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [he] fail[s] to live up to the … conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Petitioner relied on this promise for over two years. During this time, Petitioner's liberty interest has only strengthened, "crystaliz[ing] into a substantial private interest" that entitles him to due process. *Valera Chuquillanqui v. Kaiser*, 2025 WL 4110424, at *7 (N.D. Cal. Oct. 2, 2025); *see also Noori*, 807 F. Supp. 3d at 1164 (finding petitioner who had been granted parole was "not an 'arriving' noncitizen but one that has [been] present in our country for over a year" and that "[t]his substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal"). Despite this interest, Petitioner was arrested and detained by ICE officers without any notice or an opportunity to be heard. ECF No. 1 at ¶¶ 33–35; *see also* ECF No. 5 at 9 ("The Return identifies no written termination notice, no opportunity to contest Petitioner's return

to custody, and no individualized determination before a neutral decisionmaker that re-detention was warranted.”).[1]

Petitioner contends that Respondents violated his due process rights by detaining him without any constitutional process, and he requests immediate release. *Id.* at ¶¶ 52–58. Respondents do not dispute Petitioner’s due process claim or requested relief. ECF No. 4 at 4 (“[T]he government does not oppose the petition and defers to the Court on the appropriate relief.”). Accordingly, the Court finds that Petitioner’s due process rights were violated when he was detained without notice or an opportunity to be heard. The Court **GRANTS** Petitioner’s Petition for Writ of Habeas Corpus (ECF No. 1) and orders the following:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his pre-existing parole;[2]
2. Respondents are **ENJOINED AND RESTRAINED** from detaining Petitioner unless Petitioner is provided with notice of the reasons for revocation of parole

---

[1] The Court notes that “to meet statutory and regulatory requirements, revocation [of parole] should only occur when (1) the parole’s purpose is served or (2) when humanitarian reasons and public benefit are no longer warranted, *and* the noncitizen is provided written notice.” *Noori*, 807 F. Supp. 3d at 1167 (emphasis in original) (citing *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1144-46 (D. Or. 2025)); *see also* 8 C.F.R. § 212.5(e). Simply put, to properly revoke humanitarian parole, Petitioner is “entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted”—*i.e.*, due process—prior to termination. *Perez v. LaRose*, 2025 WL 3171742, at *4 (S.D. Cal. Nov. 13, 2025). Respondents failed to demonstrate that any of the conditions under 8 C.F.R. § 212.5(e) occurred or that Petitioner received any process before his parole was revoked. Based on Respondents’ briefing, the Court, therefore, has no reason to find that Petitioner’s parole was revoked or otherwise terminated in compliance with 8 C.F.R. § 212.5(e) or that Petitioner’s detention should be subject to Section 1225 instead of Section 1226.

[2] After a review of Petitioner’s claims, the Court finds that Petitioner’s APA argument, in this context, stems from the Due Process violation. Accordingly, the Court finds that it need not separately address Petitioner’s APA claim given the Court’s conclusion that Respondents’ failure to afford Petitioner due process calls for his immediate release.

and a hearing to determine whether detention is warranted.

The Clerk of the Court shall close this matter.

**IT IS SO ORDERED**.

Dated: November 23, 2026

Honorable Benjamin J. Cheeks
United States District Judge